IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TRACI JONES,                        )
                                    )
        Plaintiff,                  )
                                    )
                                    )    CIV-13-874-HE
v.                                  )
                                    )
CAROLYN W. COLVIN,                  )
  Acting Commissioner of Social     )
  Security Administration,          )
                                    )
        Defendant.                  )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application for benefits in October 2010 and alleged that she became unable to work on March 1, 2009, due to decreased hearing, chronic obstructive pulmonary disease ("COPD"), and chronic bronchitis. (TR 120, 143). She described only a brief work history as a temporary "associate" in 2008 and 2009. (TR 144-145).

1

At a hearing conducted before Administrative Law Judge Gordon ("ALJ") on October 4, 2011, Plaintiff stated that she worked from October 2008 to October 2009, that she wore hearing aids for some time, that the hearing aids "work[ed]" for her, but that she stopped using the hearing aids although she has been advised by a hearing specialist that she needed hearing aids. (TR 35-37). Plaintiff stated that she had COPD, that she received regular medical treatment for this condition, and that her breathing problems were somewhat relieved with the use of medication inhalers and a home breathing machine. Plaintiff stated that she sometimes read lips and had no trouble recognizing words. Plaintiff described her usual daily activities, which included driving her husband to and from work, dusting, vacuuming, cooking their meals, watching television, talking on a telephone with "hearing impaired" attributes, and visiting friends and family.

A vocational expert ("VE") testified at the hearing and identified jobs that would be available for a hypothetical individual in response to questioning by the ALJ. In a decision entered January 27, 2012, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security because there were jobs available in the economy, including the jobs identified by the VE, that Plaintiff could perform. The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a

determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Substantial Evidence - Step Five

In her first ground for reversal of the Commissioner's decision, Plaintiff contends that there is not substantial evidence to support the Commissioner's decision because the ALJ's RFC assessment given to the VE during the hearing did not coincide with the RFC assessment in the ALJ's decision.

This argument lacks merit. During the hearing, Plaintiff's attorney stipulated that the ALJ's vocational questioning of the VE should address the availability of jobs for an individual who could perform "unskilled, [specific vocational preparation] level two, sedentary or light" work. (TR 43). The ALJ then stated that additional physical and sensory limitations must be added to this RFC (1) to limit the individual's exposure in the workplace to loud noises, especially background noise, and (2) because of Plaintiff's COPD to limit the

3

individual's exposure to concentrated dust, fumes, temperature extremes, and related environmentally hazardous substances. (TR 44).

The VE, the ALJ, and Plaintiff's attorney next discussed the requirements of the agency's listing for hearing impairments and what medical evidence would support a finding of disability under the listing due to a hearing impairment. The VE stressed that accommodations for a hearing impaired individual would require positions in which their hearing would not be injured by "loud noises and that kind of thing," and where they would not be "communicating with the public, where they're working pretty well in unskilled work, limited [to] tasks in the sense of repetitive, routine kind of SVP 2 type of work where you're not having to interact with co-workers." (TR 52).

Returning to the question of the availability of jobs, the ALJ asked for jobs that hearing-impaired persons can perform "with those issues of background noise and the other things that were imposed upon it" in the previous discussion. (TR 55). In response, the VE testified that such an individual could perform the jobs of price marker, folding and inserting machine operator, and night cleaner. (TR 55).

In the ALJ's decision, the ALJ found at step two of the familiar sequential evaluation procedure that Plaintiff had severe impairments due to decreased hearing and COPD. The ALJ found at step three that these conditions were not *per se* disabling because the severity of Plaintiff's impairments did not meet or medically equal the requirements of the listings for special senses impairments or respiratory system impairments. At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the

sedentary, light, and medium exertional levels except that she "must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and temperature extremes, and due to decreased hearing she must avoid areas with loud background noises and where failure to hear could endanger herself or others," and that she "may frequently have difficulty with hearing involving the general public or on the telephone." (TR 21).

At step five, the ALJ relied on the VE's testimony in finding that Plaintiff was not disabled as these jobs were available in the economy for an individual with her RFC for work. The RFC assessment as found by the ALJ included the same restrictions that were contained in the RFC assessment posed to the VE during the hearing. No error occurred in this regard.

Plaintiff next argues that the ALJ's step five determination is not supported by substantial evidence because the ALJ failed to address a conflict between the job information contained in the United States Department of Labor's Dictionary of Occupational Titles ("DOT") and the VE's testimony. See Poppa v. Astrue, 569 F.3d 1167, 1173-74 (10th Cir. 2009)(ALJ must inquire about and resolve any conflicts between the VE's testimony and DOT's job descriptions); SSR 00-4p, 2000 WL 1898704, *2 (2000)(ALJ must elicit reasonable explanation for any conflict between DOT and VE's testimony before relying on VE's evidence to support disability determination). Plaintiff cites to DOT information concerning folding-machine operator jobs at DOT 369.6786-010, cleaner jobs at DOT 381.687-018 and price marker jobs at DOT 209.587-034.

The Commissioner responds that Plaintiff has cited job information for jobs NOT

5

identified by the VE and that the DOT provides job information for the jobs of folding machine operator, DOT 208.685-014, inserting machine operator, DOT 208.685-018, night cleaner, DOT 323.687-018, and price marker, DOT 209.587-034, which does not conflict with the ALJ's RFC assessment at all.

In reply to the Commissioner's argument, Plaintiff complains that the DOT has a number of listings for jobs that may or may not have been identified by the VE as available to the hypothetical Plaintiff with the same RFC as found in the ALJ's decision. Plaintiff argues that the VE's failure to identify the DOT listings results in her confusion that must, in the end, be ascribed to the fault of the Commissioner.

The problem with Plaintiff's argument is that the DOT clearly describes the position of folding-machine operator at DOT 208.685-014, the position of inserting-machine operator at DOT 208-685-018, the position of night cleaner (also described as house cleaner) at 323.687-018, and the position of price marker at 209.587-034. Plaintiff has not identified any inconsistencies between these jobs and the RFC assessment set forth at both the administrative hearing and in the ALJ's decision.

These jobs do not reflect requirements that would conflict with the RFC restrictions for hearing-related or COPD-related impairments imposed by the ALJ. For instance, the folding-machine operator and inserting-machine operator positions are described as having "moderate" noise levels, no temperature extremes, no exposure to toxic chemicals or moving mechanical parts, no talking requirements or verbal aptitude requirements, and no significant requirements for taking instructions. The other positions identified by the VE and relied

on by the ALJ have similar job descriptions. With respect to the price marker position, Plaintiff asserts that the job requires careful listening. The listing itself connotes a job that does not require listening skills at all. The listing states: "Hearing: Not Present - Activity or condition does not exist." DICOT 209.587-034. No error occurred in this regard, and there is substantial evidence in the record to support the ALJ's step five finding that jobs are available within Plaintiff's RFC for work.

IV. Duty to Develop the Record

Plaintiff asserts that the ALJ failed in his duty to develop the record. "The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." Henrie v. United States Dep't of Health and Human Servs., 13 F.3d 359, 360-361 (10th Cir. 1993). It is not the ALJ's duty, however, to be the claimant's advocate, and "the ultimate burden of proving that [the claimant] is disabled under the regulations" is borne by the claimant. Id. at 361. "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007)(quotation omitted).

Plaintiff points to a letter appearing in the record dated October 4, 2011, in which Plaintiff's attorney requested that the ALJ "send interrogatories to Dr. Aycock in Lawton requesting him to determine if the combined effects of [Plaintiff's] hearing impairment and other claimed disabilities would equal a Listed Impairment." (TR 181).

7

Plaintiff did not request during the hearing that the record be further developed. Dr. Aycock, a hearing specialist, provided a consultative evaluation of Plaintiff for the agency. On December 6, 2010, Dr. Aycock conducted testing of Plaintiff's hearing. Dr. Aycock noted in his report of the evaluation that Plaintiff stated she "had obtained a couple of hearing aids and wore them to work and said she was able to function quite well working the bread department at a Wal-Mart. One of the aids quit working [and] she accidentally stepped on the other and so has been without aids for some time. She lost her job at Wal-Mart. I am not sure exactly why she lost the job. She indicated it did not have anything to do with her hearing." (TR 216). Dr. Aycock's diagnosis was bilateral severe to profound sensorineural hearing loss, and the treatment recommendation was "amplification." (TR 216).

The ALJ found that Plaintiff's hearing impairment and COPD impairment did not meet or equal the requirements of the listed impairments for these conditions, and Plaintiff has not challenged this decision. Nevertheless, as best it can be determined from Plaintiff's argument in her briefs, Plaintiff is asserting that the ALJ should have called a medical expert to testify or, in the alternative, submitted interrogatories to a medical expert concerning the issue of medical equivalence at step three as a result of the combination of her hearing and COPD impairments. The ALJ fully explained in the decision the reasons for the step three finding based on Dr. Aycock's testing of Plaintiff's hearing and the results of Plaintiff's pulmonary function testing. (TR 21-22). It was Plaintiff's "step three burden to present evidence establishing her impairments meet or equal listed impairments." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, Plaintiff must establish

that her impairments "meet all of the specified medical criteria. An impairment that manifests only some . . . criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

The ALJ properly concluded, based on medical evidence in the record, that Plaintiff's impairments did not meet or equal the requirements of the listed impairments, and the ALJ did not err in failing to call a medical expert or submit post-hearing interrogatories to a medical expert with respect to the medical equivalence issue.[1]

Plaintiff's argument that "HALLEX 1-2-5-40 governs such a situation" is presented in a wholly conclusory manner without factual support or legal authority. Plaintiff makes a similarly conclusory argument that the VE's testimony should be deemed unreliable. This argument appears to be based on the VE's testimony that jobs for the hearing impaired require "some level of accommodation." (TR 54). Because these arguments are not cogently presented with benefit of legal authority, the merits of the arguments are not addressed.

V. Reliance on Daily Activities

Plaintiff lastly argues that the ALJ erred in relying on Plaintiff's "minimal daily activities" to find that she was capable of working. The ALJ's decision reflects consideration of Plaintiff's daily activities as well as other evidence in the record, including the reports of

---

[1] Nor was the ALJ required to recontact Dr. Aycock for additional information before making the step three determination. The regulations require the ALJ to "seek additional evidence or clarification from [a claimant's] medical source when the report from [the claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1). In this case, Dr. Aycock's report of his December 2010 consultative evaluation of Plaintiff suffered from none of these deficiencies.

9

the consultative hearing and physical examiners, the records of her treatment for hearing loss and COPD, the RFC assessments of the agency's medical consultants as support for the step five determination. The ALJ did not err in considering Plaintiff's daily activities, which included driving her husband to and from work and a wide variety of other activities, in determining, along with other relevant evidence, that she was not disabled within the meaning of the Social Security Act. In particular, the ALJ reasoned that Plaintiff was able to "effectively communicate with the [ALJ] with the amplifying equipment set at maximum volume" during the hearing, that Plaintiff testified her doctor had recommended hearing aids, and that several physical examinations of Plaintiff had reflected findings within normal limits. (TR 22). These reasons are well supported by the record. There is no indication in the record that Plaintiff was unable to communicate with her treating providers or that her respiratory problems would prevent her from working so long as she took her prescribed medications.

Because there is substantial evidence in the record to support the Commissioner's decision, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ July 21st_____, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this

Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this     1st     day of    July    , 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE